UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

MARY DOCKEY,

     Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

_____/

Hon. Sally J. Berens

Case No. 1:20-cv-153

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks review of the Commissioner's decision.

For the following reasons, the Court will **affirm** the Commissioner's decision.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards and whether there exists in the record substantial evidence supporting the decision. *See Brainard v. Sec'y of*

*Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff filed an application for DIB on August 11, 2016, alleging that she had been disabled since July 26, 2016. (PageID.174–81.) Plaintiff alleged disability due to back injury; burning in both shoulders; arthritis and stenosis; arthritis in knees, back, and wrist; heart disease with stint; neuropathy in right arm; depression; anxiety; high blood pressure; and angina. (PageID.88.) She was 51 years old at her alleged onset date. (PageID.87.) Plaintiff graduated from

2

high school and had previously worked as a cashier. (PageID.197.) Plaintiff's application was

denied (PageID.104–06), after which she requested a hearing before an Administrative Law Judge

(ALJ).

On August 15, 2018, ALJ Cindy Martin held a hearing and received testimony from

Plaintiff and Marie Barhydt, an impartial vocational expert. (PageID.59–85.) On January 11, 2019,

the ALJ issued a written decision finding that Plaintiff was not entitled to benefits because she was

not disabled from her alleged onset date through the date of the decision. (PageID.41–54.) The

Appeals Council denied Plaintiff's request for review on November 19, 2019. (PageID.27–31.)

Therefore, the ALJ's ruling became the Commissioner's final decision. 20 C.F.R. §§ 416.1455,

416.1481. Plaintiff initiated this civil action for judicial review on February 20, 2020.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating

disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1] 1.  An individual who is working and engaging in substantial gainful activity will not be found
   to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20
   C.F.R. §§ 404.1520(c), 416.920(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the
   duration requirement and which "meets or equals" a listed impairment in Appendix 1 of
   Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration
   of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4.  If an individual is capable of performing her past relevant work, a finding of "not disabled"
   must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other
   factors including age, education, past work experience, and residual functional capacity
   must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f),
   416.920(f)).

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

After determining that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, the ALJ found that Plaintiff suffered from severe impairments of cervical spine degenerative disc disease; degenerative joint disease of the shoulders and right knee; fibromyalgia; obesity; chronic pain disorder; depression; anxiety; unspecified personality disorder; and attention deficit disorder. (PageID.43–44.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.44–46.)

4

The ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§

404.1567(b), except:

> she is able to occasionally balance, stoop, kneel, crouch, crawl and climb ramps or
> stairs; never climb ladders, ropes, or scaffolds; she is able to frequently handle,
> finger and feel with the bilateral upper extremities; she is able to occasionally reach
> overhead but frequently reach in all other directions with the bilateral upper
> extremities; she is able to perform simple tasks, make simple work related decisions
> and deal with occasional changes in work processes and environment.

(PageID.46–47.)

At step four, the ALJ found that Plaintiff had no past relevant work. (PageID.52.) At step

five, based on testimony from the vocational expert, the ALJ found that an individual of Plaintiff's

age, education, work experience, and RFC could perform the occupations of office helper, price

marker and cashier, and 1,173,000 of such jobs existed in the national economy. (PageID.53.) This

represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902,

905 (6th Cir. 2016) (stating that "[s]ix thousand jobs in the United States fits comfortably within

what this court and others have deemed 'significant'").

## DISCUSSION

Plaintiff raises the following issues in her appeal: (1) the ALJ failed to properly evaluate

the medical opinions; (2) the ALJ's decision is not supported by substantial evidence; and (3) the

ALJ's step-five finding is not supported by substantial evidence.

## I.    The ALJ Properly Weighed the Opinion Evidence

### A.    Dr. Klausner

Plaintiff argues that the ALJ failed properly to apply the treating physician rule in

discounting the opinion of her treating physician, Mitchell Klausner, M.D. The treating physician

doctrine recognizes that medical professionals who have a long history of caring for a claimant

and his maladies generally possess significant insight into his medical condition. *See Barker v.*

*Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). That deference is appropriate, however, only where the opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citation omitted). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must give "good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (citation omitted). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight it should be afforded. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency

of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required explicitly to discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007).

On March 16, 2017, Dr. Klausner completed a check-box form regarding Plaintiff's ability to perform work-related activities. He indicated that during an eight-hour workday, Plaintiff could lift and carry less than 10 pounds occasionally, stand or walk for less than two hours, sit for less than six hours, and would be limited in pushing and pulling with her upper and lower extremities. Dr. Klausner wrote that Plaintiff had "chronic pain from arthritis involving cervical spine, shoulders and knees" that limited her ability to perform manual labor. He also indicated that Plaintiff could never climb ramps/stairs/ladders/ropes/scaffolds, could never kneel, crouch, or crawl and would be limited in reaching in all directions and around temperature extremes, humidity, and wetness. (PageID.688–90.) The ALJ declined to give Dr. Klausner's opinion controlling weight for the following reasons:

> Although Dr. Klausner reported treating the claimant for chronic pain in her back and knees and his treatment notes were positive for tenderness there was no evidence of decreased strength or range of motion (Exhibit 4F/10-17, 17F/l). Examinations showed some diminished range of motion in her shoulder that would be expected to cause some limitations reaching; however, she generally had good strength in her upper extremities consistent with the ability to perform light work. She also had diminished range of motion in her cervical/lumbar spine and right knee but her lower extremity strength was good and there was no evidence of an ongoing gait impairment (Exhibits 6F/5, 7F/50, 11F/12, 16F/110, 16F/254, 16F/352, 19F/49). She stated her medication was helpful for her pain and she was able to perform her activities of daily living, which further supports the ability to perform light work (Exhibit 16F/186).

(PageID.50–51.)

7

Plaintiff argues that the ALJ's cited reasons do not amount to good reasons, either because her rationale is internally inconsistent or because the evidence does not support her conclusions. First, Plaintiff argues that after stating that Dr. Klausner's notes made no mention of decreased strength or range of motion, the ALJ immediately contradicts this finding when she states in the next sentence that Plaintiff "'had diminished range of motion in her cervical spine and right knee.'" (ECF No. 9 at PageID.1724 (quoting PageID.51).) Next, Plaintiff argues that the treatment records the ALJ cited for her findings that Plaintiff generally had good strength in her lower extremities and that there was no evidence of an ongoing gait impairment do not support the ALJ's statements because they do not mention anything about lower extremity strength or gait. (*Id.*) Finally, Plaintiff argues that the ALJ's observation regarding her use of medication to alleviate her symptoms was not a good reason to discount Dr. Klausner's opinion because Plaintiff told the doctor that she took three to four Percocet each day just to be able to complete her activities of daily living. (*Id.*)

The Court concludes that the ALJ properly evaluated Dr. Klausner's opinion and gave good reasons for giving it less than controlling weight. First, the ALJ recognized that Dr. Klausner had a treating relationship with Plaintiff, but she correctly noted that Dr. Klausner's treatment notes contained no examination findings documenting decreased strength or range of motion. This was an accurate statement, as Dr. Klausner's notes never mention objective findings on those issues. (PageID.310–17, 1508.) Lack of supportability is a good reason for discounting an opinion. *See Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 253 (6th Cir. 2016) ("An example of a good reason is that the treating physician's opinion is 'unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence.'") (quoting *Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015)). Moreover, ALJs are not bound by conclusory statements of doctors on check-box forms without explanations citing detailed objective criteria and documentation. "Many

8

courts have cast doubt on the usefulness of these forms and agree that administrative law judges may properly give little weight to a treating physician's check-off form of functional limitations that did not cite clinical test results, observations, or other objective findings[.]" *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566 (6th Cir. 2016) (internal quotation marks omitted).

As for the ALJ's statement that Plaintiff had good strength in her lower extremities, Plaintiff is correct that the evidence the ALJ cited in support of this statement, (PageID.468, 544, 762, 1157, 1301, 1399, 1655), does not mention Plaintiff's lower extremity strength. But that does not mean that the ALJ was not justified in drawing the conclusion that Plaintiff had good or normal strength. *See Nealy v. Comm'r of Soc. Sec.*, No. 16-12179, 2017 WL 4250476, at *4 (E.D. Mich. Sept. 25, 2017) ("The ALJ . . . is entitled to evaluate the evidence and draw appropriate inferences."); *Stout v. Colvin*, No. 3:14-CV-563, 2016 WL 1048984, at *10 (E.D. Tenn. Mar. 11, 2016) ("[A]n ALJ may draw reasonable inferences from the evidence, but may not speculate or draw conclusions that are not supported by the record."). In discussing the medical evidence, the ALJ noted that, except for two instances in which Plaintiff was found to have decreased strength in her right hand and right arm, her treatment records generally contained no findings of decreased strength her upper extremities and no findings of decreased strength or range of motion in her lower extremities, including when Plaintiff complained of lower back and knee pain. (PageID.48–49, 1057, 1301.) Given the lack of such objective findings in the record, the ALJ reasonably concluded that the Plaintiff had good or normal strength in her lower extremities. Or, stated differently, the lack of evidence of decreased strength or range of motion in Plaintiff's lower extremities provided the ALJ a firm basis to discount Dr. Klausner's opinion as inconsistent with the record as a whole. Furthermore, the ALJ's statement that "there was no evidence of an ongoing gait impairment" was an accurate summation of the record, as Plaintiff was noted to have an

abnormal gait only once during the period at issue. (PageID.1484.) Thus, the ALJ could reasonably conclude that Dr. Klausner's opinion lacked support from both his own treatment notes and from other evidence in the record.

Finally, the ALJ permissibly considered Plaintiff's use of Percocet to control her symptoms in measuring the consistency of Dr. Klausner's opinion with the other evidence in the record. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 800 n.3 (6th Cir. 2004) ("The ALJ is permitted to consider the effectiveness of medication used to control pain and other symptoms associated with a claimant's impairments. 20 C.F.R. § 404.1529(c)(3)(iv)."). Although Plaintiff disputes the ALJ's characterization of the evidence, the ALJ's interpretation was accurate. Moreover, even if the ALJ overstated the effectiveness of pain relief, and Plaintiff's medication usage is not a good reason, any error is harmless because the ALJ provided other good reasons set forth above to discount the opinion. *See Kenworthy v. Comm'r of Soc. Sec.*, No. 1:15-CV-1006, 2016 WL 5859055, at *5 (W.D. Mich. Oct. 7, 2016) (stating that "the ALJ's error here is harmless if the ALJ provided other good reasons, supported by substantial evidence, that sustain the ALJ's ultimate conclusion that the treating physician's opinion is entitled to less than controlling weight").

### B. Robert Roschmann, M.D.

The ALJ assigned great weight to the opinion of Robert Roschmann, M.D., the State agency physician who initially reviewed Plaintiff's claim. Dr. Roschmann opined that Plaintiff could perform light work, except that she could frequently climb ramps/stairs and balance but only occasionally stoop, kneel, crouch, and crawl; could never climb ladders, ropes, or scaffolds; could frequently reach overhead, handle, and finger with her left upper extremity but only occasionally reach overhead with her right upper extremity. (PageID.51.) "Generally, an ALJ is permitted to

rely on [a] state agency physician's opinions to the same extent as she may rely on opinions from other sources." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 274 (6th Cir. 2015) (citing 20 C.F.R. § 404.1527). "Thus, an ALJ may provide greater weight to a state agency physician's opinion when the physician's finding and rationale are supported by evidence in the record." *Id.*

Citing *Miller v. Commissioner of Social Security*, 811 F.3d 825 (6th Cir. 2016), Plaintiff argues that that ALJ erred in giving great weight to Dr. Roschmann's opinion because the ALJ failed to indicate that she had considered that he did not have the complete record to review. In *Miller*, the court stated, "[w]here the non-examining source did not review a complete case record, 'we require some indication that the ALJ at least considered these facts before giving greater weight to an opinion' from the non-examining source." *Id.* at 834 (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009)). Plaintiff apparently reads *Miller*'s reference to "these facts" as referring to the state agency physician's lack of access to the complete record. Courts applying *Miller*, however, had read "these facts" differently. In *Sloan v. Commissioner of Social Security*, No. 17-11150, 2019 WL 458163 (E.D. Mich. Feb. 6, 2019), the court noted that *Blakley*, which *Miller* quoted, had in turn quoted *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007), for the requirement "that the ALJ at least considered *these facts*." *Id.* at *3 (citing *Fisk*, 253 F. App'x at 585). The *Sloan* court observed that *Fisk* indicated that the phrase "these facts" refers to evidence that the state agency physician did not have at the time he rendered his opinion—as opposed to the fact that the state agency physician did not review the complete record—as shown by the following statement in *Fisk*: "where, as here, the *treating* source referred [the claimant] to numerous sources and made recommendations that accounted for a year's worth of specialists' opinions, we require some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Id.* (quoting *Fisk*, 253 F. App'x

at 585) (internal quotation marks omitted). *See also Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 247–48 (6th Cir. 2016) (concluding that the ALJ satisfied *Miller*'s requirement because while "Dr. Tanna's assessment was completed in 2008, the ALJ's own analysis clearly spanned the entire record—through the final degenerative changes to Gibbens's spine that culminated in a cervical discectomy and fusion, the last medical event included in the record[, and] [t]he decision was informed by both Dr. Tanna's assessment and the findings of Dr. Abel's complete physical examination, as well as medical evidence later entered into the record").

This Court finds the *Sloan* court's analysis of *Miller* both cogent and based on a proper reading of the cases underlying *Miller*. The appropriate inquiry, then, is whether the ALJ considered the evidence that Dr. Roschmann did not review. Plaintiff does not argue that the ALJ did not do so, and the ALJ's decision indicates that it was based on consideration of the entire record. Moreover, it is notable that while the ALJ's RFC determination closely tracks Dr. Roschmann's opinion, it is, at least in some respects, more restrictive. (PageID.46, 51.)

Accordingly, this claim of error is rejected.

## II.  Substantial Evidence Supports the ALJ's Decision

Plaintiff next contends that remand is required because substantial evidence does not support the ALJ's decision. This argument essentially reiterates Plaintiff's argument above that the ALJ "conjured out of whole cloth" his conclusion that Plaintiff had good lower extremity strength, and there was no evidence of a gait impairment. (ECF No. 9 at PageID.1730 (quoting *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002).) Plaintiff argues that "[j]ust because a medical record does not mention a finding does not mean that there is no problem—it could simply [be] those areas were not examined or that the physician failed to chart the findings." (*Id.* at PageID.1729.) While Plaintiff's statement is correct, it is just as true that a lack of findings could indicate normal functioning because the provider found nothing out of the ordinary. But at bottom,

the point remains that a lack of findings, for whatever reason, undermines the conclusion that a claimant is disabled. In any event, for the reasons set forth above, the Court concludes that the ALJ's findings are supported by substantial evidence.

Plaintiff also argues that certain records the ALJ cited as providing "no evidence of decreased strength" were actually "positive for weakness and numbness." But this is not a correct characterization of the evidence. The pages Plaintiff cites reflect her subjective reports of her symptoms, not objective findings of the physician. (PageID.467, 478.) "Because [a claimant's] subjective complaints do not constitute objective medical findings," *Walton v. Comm'r of Soc. Sec.*, 60 F. App'x 603, 610 (6th Cir. 2003) (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir.1990)), Plaintiff's argument lacks merit.

## III.        Substantial Evidence Supports the ALJ's Step Five Finding

Plaintiff contends that the ALJ's decision is not supported by substantial evidence at step five because the vocational expert was required to identify jobs that exist in the region where a claimant lives or several specific regions, but the vocational expert only identified jobs existing in the national economy. At step five of the sequential process, the burden shifts to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy that Plaintiff could perform, her limitations notwithstanding. *See* 20 C.F.R. § 404.1566; 42 U.S.C. § 423(d)(2)(A). The Commissioner satisfies this requirement by demonstrating that there exists a significant number of jobs either: (1) in the region where the claimant resides, or (2) in multiple other regions of the country. See 20 C.F.R. § 404.1566; 42 U.S.C. § 423(d)(2)(A).

In response to the ALJ's hypothetical question, the vocational expert testified as follows:

There would be occupations that comport with these restrictions. For example, the job of an office helper. It is an SVP of 2. I would estimate around 40,000 jobs in

13

the national economy. The corresponding DOT Code is 239.567-010. The job of a price marker would comport with the limitations. This is also a light occupation with an SVP of 2. I would estimate around 307,000 jobs nationally. The DOT Code is 209.587-034. And with the limitations the job of a cashier could be performed. This is an SVP of 2. I would estimate around 826,000 jobs in the national economy. The DOT Code is 211.462-010.

(PageID.83–84.)

Plaintiff contends that this testimony did not comport with 42 U.S.C. § 423(d)(2)(A) because the vocational expert testified as to jobs which existed nationally rather than jobs which existed either in Plaintiff's region or in several regions. (ECF No. 9 at PageID.1730.) This argument lacks merit. As noted above, the Sixth Circuit has held that "[s]ix thousand jobs in the United States" satisfies the Commissioner's requirement to identify a significant number of jobs in the national economy a claimant can perform. *Taskila*, 819 F.3d at 905. The Sixth Circuit has also observed that "the number of jobs that contributes to the 'significant number of jobs' standard looks to the national economy—not just a local area." *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999). In *Phillips v. Astrue*, No. 5:10-cv-2651, 2011 WL 5526079 (N.D. Ohio Nov. 14, 2011), the court rejected an argument similar to the one Plaintiff makes:

> The VE testified that Plaintiff could perform a total of 106,000 jobs in the national economy. (*See* Tr. 48-49.) Work that exists in the national economy is defined as work that exists either in the region where an individual lives or in several regions of the country. *Id.* (quoting 42 U.S.C. § 423(d)(2)(A)); *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). Plaintiff suggests that this definition requires a VE literally to state numbers of jobs in the "regional" economy as opposed to the "national" economy. This is a non sequitur. Plaintiff does not cite, and the Court is not aware of any legal authority that requires a VE to use magic words in his testimony to designate numbers of jobs in the "regional" economy; therefore, the Court is not persuaded that the VE should have done so here. Moreover, there is no reason to assume the VE intended a definition other than that set forth in the regulations.

*Phillips*, 2011 WL 5526079, at *11. Here, the vocational expert testified that there existed approximately 1,173,000 jobs in the national economy that an individual with Plaintiff's RFC could perform. Given that the vocational expert identified such a large number of jobs, it was

reasonable for the ALJ "to infer that such jobs exist in several regions." *Vining v. Astrue*, 720 F. Supp. 2d 126, 128 (D. Me. 2010) (expressly rejecting the argument that claimant was entitled to relief because the ALJ failed to specify whether the 10,000 jobs identified by the vocational expert existed in the region of claimant's residence or multiple regions).

Accordingly, this claim of error is rejected.

## **CONCLUSION**

For the reasons stated above, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. An order consistent with this opinion will enter.

Dated: March 31, 2021                                            /s/ Sally J. Berens
                                                                               SALLY J. BERENS
                                                                               U.S. Magistrate Judge